Mr. Jim Bob Humphrey, President Arkansas Burial Association Board 101 East Capitol, Suite 113 Little Rock, Arkansas 72201
Dear Mr. Humphrey:
I am writing in response to your request for an opinion on the proper disposition of surplus burial association revenues. Specifically, you set forth the following information and pose the following question:
The Arkansas Burial Association Board was created to regulate and oversee the operation of local burial associations. A.C.A. § 23-78-101
et seq. A Burial Association is licensed by the Board to defray all or part of the funeral expenses of the members by furnishing service and or merchandise at the time of death. A.C.A. § 23-7[8]-101.
Each burial association is owned by its members. Members hold certificates entitling them to funeral services and merchandise at the contract funeral home of record. The denomination of a member certificate is normally $500, $1,000, or $2,500. Each association has officers, including the Secretary/Treasurer, who is charged with the responsibility of the collection and disbursement of funds in accordance with the Statutes, Rules and Regulations.
Rule No. 2 of the Rules and Regulations governing Burial Associations provides "Owner of Benefits". Since Burial Associations are non profit mutual benefits societies, all assessments, dues and/or other funds of whatever kind or character, collected or received by them over and above necessary expenses (which in no event may exceed Twenty Five percent (25%) of its receipts for any given period) shall be and remain the property of the association for the use and benefit of its members only. (Amendment by Act 360 of 1981).
The Board is faced with an unexpected problem. There are several associations which have a relatively small membership and assets which are sufficient to pay all death claims and still have a surplus. The question facing the Board is what happens to the money if all the members of the association die, except for one, and a surplus remains.
It has been suggested that the last man standing would be entitled to all of the money remaining in the association even if that amount would succeed [sic exceed] the benefit allowed to him under his particular certificate. It should be noted that the maximum certificate allowable is Twenty Five Hundred Dollars ($2,500). Others have suggested that if there remained no persons whose certificates needed to be honored that the money remaining would escheat to the state. Still others suggest that the remaining funds would be transferred to an eligible non-profit corporation.
The legislature apparently never envisioned a situation in which a Burial Association would not have members and has not provided for the situation. We seek an official opinion on the subject.
RESPONSE
In my opinion the answer to your question is not entirely clear under Arkansas law. There is no express statutory provision or rule or regulation of the Board in this regard. Assuming the burial association remains in existence and is not legally dissolved, in my opinion any surplus funds remain the property of the association. If a burial association is legally dissolved, the question arises as to the proper disposition of surplus funds. In the absence of any law or regulation governing the question, the issue may be determined by the corporate structure of an individual burial association and by the articles of incorporation or bylaws of such association, to the extent consistent with state statutes. Some associations may be unincorporated entities, some may be incorporated under the 1963 Nonprofit Corporation Act and some may be incorporated under the newer 1993 Nonprofit Corporation Act. Different statutory provisions govern the disposition of assets on dissolution of these respective types of entities. In some cases, distribution to governmental entities or to another nonprofit entity is authorized. Under the 1993 Nonprofit Corporation Act, distribution to the remaining members of a "mutual benefit corporation" is authorized. In my opinion, however, it is not clear that a court faced with the question would sanction a windfall "last man standing" distribution of burial association surplus funds under this last cited provision.
As you note, the relevant statutory subchapter is found at A.C.A. §§ 23-78-101 to-125 (Repl. 2004) and (Supp. 2005). It was adopted in 1953. See Acts 1953, No. 91. All burial associations, whether created before or after the passage of this subchapter are deemed to be organized and operating "exclusively" under the provisions of the subchapter. See A.C.A. § 23-78-102 and § 23-78-103 ("This chapter shall be deemed and held exclusive authority for the organization and operation of burial associations within this state, and the associations shall not be subject to any other laws respecting insurance companies of any class, kind, or character"). This subchapter, however, does not address the disposition of surplus funds under the circumstances you describe. Section 23-78-122(a)(1)(A) addresses the disposition of "collections," which presumably refers to the membership dues and assessments paid by members to secure the issuance of "certificates" entitling members to benefits (see A.C.A. § 23-78-116). Section23-78-122 provides that: "Seventy-five percent (75%) of the collections of any burial association or society shall be solely for the payment of benefits provided by membership certificates and shall not be used for the payment of operating expenses." This statute also addresses the allowable investment of such funds. Id. at (a)(2). Additionally, as you note, a Board Rule also requires that "all assessments, dues and /or other funds of whatever kind and character . . . over and above necessary expenses . . . shall be and remain the property of the association for the use and benefit of its members only." See Arkansas Burial Association Board Manual, Rule 2. Similarly, Rule 5 of the Board's Manual provides that: "Should any association have on hand, at the end of any calendar year, funds over and above its legal obligations said funds shall be retained by the association for the purpose of meeting its future losses."
In addition, individual burial associations are required to maintain rules and bylaws. A.C.A. § 23-78-115. The Board has promulgated standard bylaws in the Board Manual and it is stated that "All burial associations shall have and maintain by-laws embodying" the provisions set out in the Board's standard bylaws. Article 25 of the standard bylaws states that: "If at the end of any calendar year, the funds in the treasury of the Association are more than sufficient to meet losses and expenses for such year, than [sic] the surplus shall be carried as a reserve for the sole purpose of meeting future losses and expenses." No provision is made in the subchapter or the applicable rules for the liquidation or dissolution of burial associations or the disposition of association funds upon dissolution of a burial association.[1]
In my opinion, to the extent that a burial association continues to exist and has not been legally dissolved, the statutory and regulatory provisions above require any surplus burial association funds to continue to be held as property of the association for the use and benefit of any members. In response to your specific question, therefore, regarding what happens to the surplus if all the members of an association save one die, in my opinion absent a legal dissolution of the association, the surplus remains association property.
To the extent your question involves the legal dissolution of a burial association, in my opinion the disposition of any assets upon such dissolution may be governed by the statutes applicable to that particular entity's corporate structure and by its articles of incorporation or any relevant association bylaws, to the extent they are consistent with the applicable statutes and rules. It is my understanding from a review of a number of burial association corporate filings with the Secretary of State that burial associations may exist in a number of different forms. Some may be unincorporated associations, some may be incorporated under the "old" nonprofit corporation act and some may be incorporated under the "new" nonprofit corporation act. See www.sos.arkansas.gov. Different statutory provisions governing disposition of assets on dissolution apply to these various kinds of business entities.
An initial question arises as to whether the general statutes governing dissolution of corporations are applicable to the disposition of assets of burial associations. Again, the subchapter governing burial associations states that it is "exclusive" in nature. See A.C.A. §§23-78-102 and 103, mentioned earlier. I cannot state with certainty that the general corporation statutes would be invariably applied to the special category of burial associations. In my opinion, however, the "exclusivity" provisions in the applicable subchapter appear to be directed at regulatory authority over burial associations and indicate that the Burial Association board is the exclusive regulatory entity over the various associations. In my opinion this "exclusivity" language does not, in all likelihood, prohibit otherwise applicable statutes from dictating the proper disposition of assets on dissolution of a burial association. In the absence of any specific statute or regulation pertaining to burial associations, therefore, I will set out the general corporate provisions.[2]
Disposition of surplus funds of an unincorporated burial association might be governed by the provisions of A.C.A. § 4-28-509, adopted in 1997, which provides as follows:
4-28-509. Disposition of personal property of inactive nonprofit association.
If a nonprofit association has been inactive for three years or longer, or a different period specified in a document of the nonprofit association, a person in possession or control of personal property of the association may transfer custody of the property:
(1) if a document of a nonprofit association specifies a person to whom transfer is to be made under these circumstances, to that person; or
(2) if no person is so specified, to a nonprofit association or nonprofit corporation pursuing broadly similar purposes, or to a government or governmental subdivision, agency, or instrumentality.
For burial associations incorporated under the provisions of the "Arkansas Nonprofit Corporation Act," originally adopted in 1963, Section 4-28-207 may be the applicable provision:
Notwithstanding any provision of Arkansas law or in the articles of incorporation to the contrary, the articles of incorporation of each nonprofit corporation organized under the laws of this state which is an exempt charitable, religious, literary, educational, or scientific organization as described in section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3), shall be deemed to contain the following provisions:
"Upon the dissolution of the corporation, the board of trustees shall, after paying or making provision for the payment of all of the liabilities of the corporation, dispose of all of the assets of the corporation exclusively for the purposes of the corporation in such manner, or to such charitable, educational, religious, literary, or scientific purposes as shall at the time qualify as an exempt organization or organizations under section 501(c)(3) of the Internal Revenue Code of 1954, or the corresponding provision of any future United States Internal Revenue Law, as the board of trustees shall determine. Any such assets not so disposed of shall be disposed of by the circuit court of the county in which the principal office of the corporation is then located, exclusively for such purposes or to such organization or organizations, as said court shall determine, which are organized and operated exclusively for such purposes."
It is not clear, however, that burial associations are, or are eligible to be, 501(c)(3) organizations. This determination is one for federal authorities and may involve the operations of an individual burial association. Section 4-28-207 does not appear to address corporations that are not described under § 501(c)(3). Section 4-28-207
may therefore be of limited applicability to burial associations. In the absence of legislative or regulatory clarification, and in the absence of any provision in an association's articles of incorporation or bylaws for distribution of the assets on dissolution, resort to the circuit court of the county in which the burial association is located may be necessary to determine the disposition of assets of burial associations organized under the 1963 Nonprofit Corporation Act.
Finally, for burial associations incorporated under the "Arkansas Nonprofit Corporation Act of 1993," that Act requires each corporation organized under its provisions to provide in its bylaws "provisions not inconsistent with law regarding the distribution of assets on dissolution." A.C.A. § 4-33-202(7). Reference to the bylaws of a burial association organized under this Act should first be had to determine the proper disposition of surplus revenues.
If there are no applicable bylaws, the 1993 act contains a provision similar to A.C.A § 4-28-207 set out above concerning 501(c)(3) organizations. See A.C.A. § 4-33-150. Again, however, that provision may be of limited applicability to at least some burial associations. If so, A.C.A. § 4-33-1406 may be the applicable provision. It states as follows:
A dissolved corporation continues its corporate existence but may not carry on any activities except those appropriate to wind up and liquidate its affairs, including:
* * *
(6) if the corporation is a public benefit or religious corporation, and no provision has been made in its articles or bylaws for distribution of assets on dissolution, transferring, subject to any contractual or legal requirement, its assets: (i) to one (1) or more persons described in section 501(c)(3) of the Internal Revenue Code, or (ii) if the dissolved corporation is not described in section 501(c)(3) of the Internal Revenue Code, to one (1) or more public benefit or religious corporations;
(7) if the corporation is a mutual benefit corporation and no provision has been made in its articles or bylaws for distribution of assets on dissolution, transferring its assets to its members or, if it has no members, to those persons whom the corporation holds itself out as benefitting or serving; and
(8) doing every other act necessary to wind up and liquidate its assets and affairs.
Id. (Emphasis added).
I am not certain of the proper classification of burial associations under the three-part classification system described above. Burial associations would appear to be "mutual benefit corporations" under the various classifications set out in the 1993 act. See A.C.A. § 4-33-1707. Section 4-33-1406(a)(7) indicates that upon dissolution, assets of such corporation may be "transferr[ed] . . . to its members or, if it has no members, to those persons whom the corporation holds itself out as benefiting or serving. . . ." This statute might therefore be invoked to support the argument that the "last man standing" should receive any surplus funds. It is clear from a reading of the commentary to this statute (which is based on a uniform act), that remaining members may nonetheless be prohibited by contractual or other legal requirements from receiving the assets. See Official Comment to A.C.A. § 4-33-1406
(paragraph 7). In my opinion the statutes and rules set out above governing the maintenance and restriction of burial association assets (see A.C.A. § 23-78-122 and Rules 2 and 5) may restrict their use to association purposes and prevent the type of windfall a "last man standing" distribution would effect. In my opinion a court faced with the question might conclude that the statutes and rules relating specifically to burial associations prevent the transfer of assets on dissolution to one remaining member, as you question posits. The alternative avenue of distribution to the "persons whom the corporation holds itself out as benefitting or serving" may be the applicable provision in that event. The precise meaning of this clause, however, is unclear in the context of a burial association with defined, but now deceased members.
Again, the question you pose is not clearly addressed by Arkansas law. Legislative, judicial, or regulatory clarification is indicated.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] Apparently a former rule promulgated during a period when the State Bank Commissioner regulated burial associations provided that: "Should any association have on hand at the end of any fiscal year any funds over and above its legal obligation, said funds may be retained by the association for the purpose only of meeting its future losses. If for any reason an association should be liquidated or discontinue operations, all funds on hand after its just claims have been paid, shall be distributed to the members of the association then in good standing ratably as their interests may appear." See Thompson v. White River Burial Association, 178 F.2d 954 (8th Cir. 1950) (Emphasis added). It is not clear when or why this provision was omitted from the current regulations, the language of which is otherwise fairly similar to the older regulations.
[2] I have also considered the possible applicability of the "Unclaimed Property Act," codified at A.C.A. §§ 18-28-201 to-230 (Repl. 2003 and Supp. 2005). In my opinion, that subchapter may be inapplicable due to the absence of any "apparent owner" or "owner" for purposes of that Act. In the situation you describe, the law does not define an "apparent owner" or "owner," to whom the notice and procedural requirements of the Unclaimed Property Act could apply. In any event, even if this Act is applicable, the surplus property would not be deemed abandoned under the Act until at least the expiration of one year from the time the property becomes distributable. See A.C.A. §18-28-202(a)(8) or (a)(10). In the intervening period, the issue may be governed by the corporate statutes discussed above. *Page 1